# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ENDY GUERRA-PORTILLO,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

Case No.:  3:26-CV-3625 JAO (DEB)

**ORDER GRANTING IN PART WRIT OF HABEAS CORPUS**

(ECF No. 1)

Presently before the Court is Petitioner Endy Guerra-Portillo's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241.  ECF No. 1.  Also before the Court is Respondents Todd Blanche's (Acting Attorney General), Markwayne Mullin's (Secretary of the U.S. Department of Homeland Security ("DHS")), Christopher LaRose's (Warden of Otay Mesa Detention Center), Daniel Brightman's (San Diego ICE Field Office Director), and the U.S. Department of Homeland Security's (collectively, "Respondents" or the "Government") Return to the Petition, ECF No. 5, and Petitioner's Traverse to Petition for Writ of Habeas Corpus, ECF No. 6.  For the reasons set forth below, the Court **GRANTS** the Petition on due process grounds.

## BACKGROUND

Petitioner, a citizen of Honduras, entered the United States with his mother and sister on April 13, 2019, when he was fifteen years old.  *See* ECF No. 1 ¶ 16.  Petitioner and his family sought asylum, and after a brief period of detention by immigration officials, Petitioner was released with an Order of Release on Recognizance on April 17, 2019.  *See id*.  At that time, Petitioner was served with a Notice to Appear dated April 15, 2019, which did not include a date or time for a hearing.[1]  *See id*. ¶ 17.  Nevertheless, per officer instruction, Petitioner appeared in Miami Immigration Court and was told he would be mailed a notice of hearing.  *See id*.

Petitioner's mother filed an affirmative asylum application on August 6, 2019 and included Petitioner as her derivative.  *See id*. ¶ 18.  Petitioner was issued a Social Security Number and an employment authorization document in March 2020, the latter of which he renewed in 2024.  *See id*.

On or about April 6, 2026, Petitioner was detained while traveling with his employer to the Navy Seal Base in Key West, Florida.  *See id*. ¶ 19.  Petitioner was detained in Florida before being transferred to the Otay Mesa Detention Center, where he remains detained.  *See id*. ¶ 21.  Petitioner was not provided with any notice or information on why he was being re-detained, *see id*., and was provided no updated information suggesting that he had been determined to be a flight risk or a danger to the community, *see id*. ¶ 35.  He was then issued a second Notice to Appear dated April 16, 2016.  *See id*. ¶ 20.

Petitioner now alleges that his detention violates the Due Process Clause of the Fifth Amendment, the Fourth Amendment, and the Administrative Procedure Act.  *Id.* ¶¶ 44–53.

## LEGAL STANDARD

---

[1] It appears the initial Notice to Appear was never filed with the court.  *See id.* at 17.

26-CV-3625 JAO (DEB)

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241.  *See* 28 U.S.C. § 2241(a).  The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals.  *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)).  However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

Petitioner argues that the summary revocation of his release without notice or a hearing violates the Due Process Clause.  ECF No. 1 ¶¶ 44–51.  The Court agrees.

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693 (9th Cir. 2001).  "[I]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  The Due Process Clause generally "requires some kind of a hearing before the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).  "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty."  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citations omitted).  Although the initial decision to detain or release an individual may be within the government's discretion, "the government's decision to

26-CV-3625 JAO (DEB)

release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[] to live up to the . . . conditions [of release].'" *Id.* (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody." *Pinchi*, 792 F. Supp. 3d at 1032 (citing *Romero v. Kaiser*, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022)).

Respondents contend that "Petitioner is subject to mandatory detention under § 1225(b)(2)," but "acknowledge[] that this Court, and Courts in this District, have repeatedly reached the opposite conclusion under the same and/or similar facts." *See* ECF No. 5 at 1–2. Thus, they "do[] not oppose the petition." *See id.*

Petitioner was released with an Order of Release on Recognizance on April 17, 2019. *See* ECF No. 1 ¶ 16. He has complied with his release conditions, applied for asylum, and demonstrated for the past seven years that he is not a flight risk or danger to the community. *See id.* ¶ 17. United States Citizenship and Immigration Services approved his employment authorization documents in 2020, which he renewed in 2024. *See id.* ¶ 18.

Petitioner thus has a protected liberty interest continuing to remain out of custody. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1034 ("[Petitioner's] release from ICE custody after [his] initial apprehension reflected a determination by the government that [he] was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless [he] no longer meets those criteria."); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164 ("Petitioner is not an 'arriving' noncitizen but one that has [been] present in our country for over a year. This substantial amount of time indicates he is afforded the Fifth Amendment's guaranteed due process before removal."); *Alvarenga Matute v. Wofford*, 807 F. Supp. 3d 1120, 1129 (E.D. Cal. 2025) (finding the petitioner had a protected liberty interest in his release).

As Petitioner has a protected liberty interest, the Due Process Clause requires procedural protections before he can be deprived of that interest. *See Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). To determine which procedures are constitutionally sufficient to satisfy the Due Process Clause, the Court must apply the *Matthews* factors. *See Matthews*, 424 U.S. at 335. Courts must consider:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.*

The Court finds that all three factors support a determination that the Government's revocation of Petitioner's parole without notification, reasoning, or an opportunity to be heard, denied Petitioner of his due process rights. First, as discussed above, Petitioner has a significant liberty interest in remaining out of custody pursuant to his release in 2019. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690. Petitioner has an interest in remaining with his family and continuing the asylum process. *See Morrissey*, 408 U.S. 471 at 482 ("Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life.").

Second, the risk of an erroneous deprivation of such interest is high as Respondents revoked Petitioner's release from custody without providing Petitioner with notification, reasoning, or a hearing. Since DHS's initial determination in 2019 that Petitioner should be released because he posed no danger to the community and was not a flight risk, there is no evidence that these findings have changed. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("Release reflects a determination

26-CV-3625 JAO (DEB)

by the government that the noncitizen is not a danger to the community or a flight risk."). Indeed, after his release from custody, Petitioner attended all Immigration Court hearings, has not been arrested or accused of any criminal activity, has work authorization, and is seeking asylum. *See* ECF No. 1 ¶ 16–18. "Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk[.]" *Saravia*, 280 F. Supp. 3d at 1176. "Where as here, 'the petitioner has not received any bond or custody hearing,' 'the risk of an erroneous deprivation of liberty is high' because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1047 (E.D. Cal. 2025)) (cleaned up).

Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is "low." *See Alvarenga Matute*, 807 F. Supp. 3d at 1130; *Pinchi*, 792 F. Supp. 3d at 1036; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("If the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

Therefore, because Respondents detained Petitioner by revoking his release in violation of the Due Process Clause, his detention is unlawful. *See, e.g.*, *Monroy Martinez v. Lyons*, 2026 WL 1047937, at * 5 (S.D. Cal. Apr. 17, 2026) (granting a writ of habeas corpus on due process grounds where the petitioner's release on bond was revoked); *Navarro Sanchez v. LaRose*, 2025 WL 2770629, at *5 (S.D. Cal. Sept. 26, 2025) (granting a writ of habeas corpus releasing petitioner from custody to the conditions of her preexisting parole on due process grounds).[2]

---

[2]  The Court need not address Petitioner's claim arising under the APA because the Petition can be resolved on due process grounds. However, the Court notes that other courts have found violations of the APA based on similar grounds. *See, e.g.*, *Navarro Sanchez*, 2025 WL 2770629, at *4 (finding revocation of petitioner's parole arbitrary and capricious because respondents did not state any reasons

26-CV-3625 JAO (DEB)

///

## CONCLUSION

Based on the foregoing, the Court **GRANTS IN PART** the Petition for Writ of Habeas Corpus (ECF No. 1), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting release. The Court **ORDERS**, prior to any re-detention of Petitioner, that Petitioner is entitled to notice of the reasons for revocation of his release and a hearing before a neutral decision maker to determine whether detention is warranted. The government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. *See, e.g.*, *Pinchi*, 792 F. Supp. 3d at 1038. The Parties are **ORDERED** to file a Joint Status Report by <u>July 9, 2026</u>, confirming that Petitioner has been released.[3]

**IT IS SO ORDERED.**

Dated: July 2, 2026



Jill A. Otake
United States District Judge

---

for the revocation); *Noori*, 807 F. Supp. 3d at 1168 (concluding that revocation of release violated the APA). Similarly, the Court need not address Petitioner's Fourth Amendment claim. *See, e.g.*, *Al Saadi v. LaRose*, No. 26-CV-1779-GPC-JLB, 2026 WL 892831, at *6 (S.D. Cal. Mar. 30, 2026); *Tulyakov v. LaRose*, No. 3:26-CV-01695-BTM-BLM, 2026 WL 981218, at *3 (S.D. Cal. Apr. 13, 2026); *Jolcin v. Noem*, No. 26-CV-1786-JES-BJW, 2026 WL 898282, at *3 (S.D. Cal. Mar. 30, 2026).

[3] Petitioner requested attorney's fees, related expenses, and costs pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. *See* ECF No. 1 at 23. Petitioner's counsel may submit an appropriate EAJA fee application within 30 days of the issuance of this Order. *See* 28 U.S.C. § 2412(d)(1)(B).

26-CV-3625 JAO (DEB)